May it please the Court, I'm still Joshua Glellen, and now I'm representing the widow Verducci. There is very little to distinguish these two cases. Here again, the widow, and dozens of cases, scores of cases with this one law firm alone. I don't know how many hundreds of cases there must be nationwide that present the same fact pattern, where the widow recognizes that the longshore death benefits remedy is better than any likely recovery in wrongful death, and therefore absents herself or himself from that wrongful death proceeding, while other family members who have no rights under the Longshore Act want to pursue a wrongful death tort remedy against the asbestos defendants. The same situation pertained in this case, except, of course, there is not the factor of the ALJ finding the widow's testimony to be not very credible. There is the same situation in that in each case there is no evidence whatsoever that the widow, contrary to her clear election at the outset not to have anything to do with the tort proceeding, in each case the widow stays out of that and accepts no money from settlements of the wrongful death actions. In neither case did the widow sign anything or accept money, and in neither case could the child of the deceased, now in the Verducci case this is not the widow's daughter, this is the widow's stepchildren who brought the wrongful death action. I don't think that's a difference that makes a difference between the two cases, but there is that, and there's no indication at all that the children would even have been interested in taking care of the widow. But in each case, again, even though the employer's potential subrogation interest in reducing its death benefits liability, even though that was implicated by the widow's refusal to proceed against tortfeasors, the scope of 33G does not extend to effect the forfeiture that the ALJs and the board have effected here. Once again, we're back to whether the widow entered into a third-party settlement so as to forfeit her rights under the Longshore Act. Now, again, as I was saying earlier, the law distinguishes this whole subrogation question, distinguishes one person entitled to compensation, the injured employee during his lifetime, from another person entitled to compensation, here the widow. There are even cases as a Third Circuit case, Bundins, which is cited in the briefs, in which the widow and children all had wrongful death recoveries, and the difference with the question was whether the amount of the settlement was in fact less than the amount of compensation to which they would be entitled. The actual breakdown of the recovery among the individual plaintiffs in that wrongful death action had to be compared with what each of those individuals would be entitled to under the Act. So there's one person entitled to compensation until the death, and the estate then succeeds to his interests after his death, to the extent they haven't already been taken care of, to the extent his longshore rights have not already been determined, and his third-party case remains open as to some defendants. This is typical in the asbestos situations. But the widow's rights do not arise until the time of death, and the only thing that would be offset against her longshore Act rights are recoveries that she has for the wrongful death. Again, her lifetime loss of consortium recovery would not be offset against the death benefits, as it's for a different cause of action completely. I'm not sure what. I have not done my best to illuminate the Court on as to this case in the discussion of the previous case. I invite the Court's further questions. I don't think so. Thank you. Thank you. I would reserve a couple of minutes. Sure, of course. Thank you. I'm still Frank Hugg, Your Honors. Again, I'll apply the principles in dispute here to the legal facts of the money involved. There were pre-death settlements. The Yates decision is well known, and the line between what type of benefit is paid is the date of death. In this instance, prior to Mr. Verducci's date of death, there were pre-death settlements of $1,050,000. That's BAE excerpts of record. The net to the plaintiffs, which would be Mr. Verducci and for whatever reason he would disperse to his wife, $639,000. After death, the settlements were $86,271, the net $53,000. It's also correct that at least the record is bereft of any information, any proof that money was paid to the widow. However, she testified that she trusted completely the stepdaughter, Alexandria, and so the issue is whether or not, again, 33F and G apply to the post-death settlements. And that must be compared with the two releases that were involved in that part of the case, Pfizer for $7,000, Zurn for $5,000. The ALJ, as just described by counsel for the claimant, the ALJ went about making the calculations of the benefits to which the widow would have been entitled through the date of the two settlements, Zurn and Pfizer. The total amount of money that she would have been entitled to and would have been entitled to as a person entitled to compensation was $81,000, which the ALJ correctly calculated. $81,000 obviously exceeds the $12,000 in the settlements that were achieved, and therefore the death claim is barred because there's no evidence. I'm sorry, the release is provided for the heirs, and again, the widow is an heir. Using the same guidelines as the personal representative of the estate, those were signed by the daughter, but the daughter was again acting on behalf of the widow. And what's the evidence in this case of that? In this case, it's relevant because the— No, no, no, not why it's relevant. What's the evidence that the daughter was acting as the agent for the mother in this case? The widow testified that she trusted the daughter to do what was right,  and she was acting, in effect, as an agent for the daughter, for the widow. And that's her testimony, again, puts someone else in charge of the money, but he's acting on behalf of the widow. That's the evidence. It sounds like there's a lot of cases. Do you have any authority to say that's enough to support an agency relationship? No, most—I mean, yes, there are many of these cases, but the main reason you can establish that there's a bar is because within the— as both judges put out, put in their reasoning, the overall document includes the heirs in these two, and those heirs don't necessarily have to sign the agreement to be binding, and they don't necessarily have to have their name placed in there. If they're referred to as heirs, which clearly Mrs. Verducci was the heir, then Section 33 applies. This is all done, and these releases that you see and the waivers that are in the records, these were all done as part of a scheme to take the money from the lawful, the person who should have received it, the mother, the surviving widow, and instead give it to other persons, usually, in fact, if not always, family members. The authority is that the contract, the release, is binding upon the family members. Each of the two LJs in these two cases reached that conclusion based on the wording of the release, but also with the acknowledgment that the widow never signed the release. Under California law, there are many factors that can go into determining whether or not the contract would be binding, but there's no doubt in this instance for the reasons that both judges stated and the BRB approved, that the contract, the release, applied to the widow, and therefore Section 33 applies. It's not immediately clear from the act itself, but if 33G2, there must also be a notice requirement, of which there's been no assertion of any claim that notice was provided to these settlements. What's your view of the Stadmiller case and how it applies here, if at all? I've been reading it quite a bit, and I think Mrs. Verducci did not act with the same vigor about protesting that Mrs. Stadmiller may have. But on the other hand, it doesn't matter how active or whether or not it matters. It's a factor, but Mrs. Verducci was not involved in any of the types of things that occurred for Mrs. Stadmiller. She was more timid, not in a way that's very relevant, but she did defer to her stepdaughter as a person entitled to and who could make the agent's work on behalf of her stepmother. Stadmiller, there was money being issued. She returned the checks, and she also did not sign the releases, but Stadmiller would be not the same type of activity in which it occurred. Would the legal principle from Stadmiller govern here? I don't think so because Stadmiller is what probably should have been done in all of these many cases that are floating about, namely, something should be done to require disclosure to the surviving widow of the monies that she could be entitled to. Stadmiller is an active person with the attorney representing her, backing out of a settlement agreement so that she could pursue her long-term entitlement. There's no evidence that Verducci or Hale, for that matter, were seeking to avoid the insertion of these releases with states in reference to the Longstrike, but that doesn't determine what the release is, which is outcome-determinant. Thank you for your attention. Thank you very much. May it please the Court. Two points I'd like to emphasize here. First, the stepdaughter, excuse me, in this case, could not have been an agent authorized to do something on behalf of the widow which the widow had made perfectly clear from the outset that she wanted nothing to do with. She certainly was not authorized to settle Mrs. Verducci's wrongful death rights. Mrs. Verducci did not want to assert any such rights or to settle any such rights. So her stepdaughter could not have been her representative authorized to do that. The question at second, the question whether these releases that the stepdaughter did sign would bind the widow by the fact that they referred to heirs, even though they also spelled out the other heirs and didn't mention the widow. The question whether those releases would bind the widow if she then sought to sue the asbestos defendants, that would be the relevant question. Is her cause of action released by the releases that the stepdaughter signed? But that is not the question. We're not here to determine whether Mrs. Verducci can sue the asbestos defendants. She doesn't want to, never has wanted to, and by the time these settlements were executed by the stepdaughter, the time limitations had already expired on her ability to file a wrongful death claim anyway. I know the Bunden's decision, advised by my co-counsel, we did not cite that in her brief. It is at 46 Federal 3rd 292. But that's not the only case that does this. This Court in the Force decision and a couple of others have recognized that each plaintiff's recovery goes to offset under Section 33F only that person's rights under the Longshore Act. The children's rights are one thing and the surviving spouse's rights are another thing. One may be foreclosed and yet the other remains alive. On behalf of the scores of widows similarly situated to those in these two cases who have received nothing from any tort suits and who never signed anything or authorized anyone to sign anything releasing putative tort feasers from liability to them, we ask the Court simply to apply the statute as it is written. And since the claimants here did not enter into settlements, their rights are not barred. Thank you very much. Thank you very much. Thank you all for your presentations in both of these cases, Beverly Hill and Bay Systems and Luz Verducci v. Bay Systems. Those two cases are now submitted. The next case on our docket, Service Employees International v. Director, Office of Workers' Compensation Programs, has been submitted on the briefs. So that concludes our docket for this morning. Appreciate everybody's presentations, and we'll be in recess until tomorrow. Thank you.
judges: Rawlinson, Callahan, Bolton